UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| BRIAN KEITH SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 09-48-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LADONNA THOMPSON, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Brian Keith Smith is a state inmate, currently incarcerated at the Western Kentucky Correctional Complex ("WKCC") in Fredonia, Kentucky. On October 7, 2009, he filed this action seeking injunctive relief and monetary damages based on claims that Kentucky Corrections Policy and Procedure ("CPP") 17.1 violates his rights under the First and Fourteenth Amendments to the United States Constitution as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* (2000) [Record No. 1] More specifically, Smith alleges that CPP 17.1, which prohibits inmates from wearing rings with stones or raised surfaces, violates his right to practice his religion. According to Smith, he and his wife, as members of the African Methodist Episcopal ("AME") Church, have entered into holy vows which prohibit the removal and/or substitution of rings exchanged during their wedding ceremony. Smith's wedding ring contain stones and, therefore, constitutes contraband under the regulation being challenged. Smith has named LaDonna Thompson in her individual

and official capacity as the Commissioner of the Kentucky Department of Corrections as the sole Defendant in this proceeding.

On April 20, 2010, Defendant Thompson moved the Court to enter summary judgment with respect to all claims asserted in the action. [Record No. 19] After briefing of the Defendant's motion was completed, Plaintiff Smith filed a cross-motion for summary judgment. [Record No. 27] Having reviewed the materials submitted by the parties, the Court will grant the motion filed by the Defendant. Smith's claims will be dismissed, with prejudice, and his motion for summary judgment will be denied.

**I.**

Smith's Complaint contains the following allegations supporting his claims:

(1) On April 23, 2009, Defendant LaDonna H. Thompson, Commissioner, of the Kentucky Department of Corrections (KDOC), issued a "Memorandum" to the Inmate Population of the Adult Institutions in Kentucky implementing Revision to Corrections Policy and Procedure (CPP) 17.1, Inmate Personal Property." Specifically, on page 2 of said memorandum, under "Deleted items to be mailed out or disposed of" states: "Any ring that is not a plain band style (without gems, stones or raised surface)." (Exhibit A1-A2). Along with the Defendant's memorandum is a six page Revision of the "Authorized Property List," pertaining to Kentucky Adult Inmates. Specifically, page 3 of the Revised Inmate Property List States in pertainant [sic] part that: Ring (plain band style only: no jewels, stones, or raised surfaces; maximum declared value of $100.00 each). (Exhibit B, pg. 3). According to Defendant's April 23, 2009 Memorandum, the revisions to CPP 17.1, Inmate Personal Property, have been filed with the LRC, with a scheduled effective date of July 6, 2009 (Exhibit A1). Plaintiff's "weddingring" that contains three (3) Small Stones, will become contraband that is required to be mailed out or disposed of by July 6, 2009."

(2) Plaintiff filed a grievance at his institution of confinement pursuant to CPP 14.6, grievance no. 6235, asserting that the Revised CPP 17.1 violates his "first amendment right" to the free exercise of Religious Practice and Belief; Plaintiff's Fourteenth Amendment right" to equal protection of the Law; Plaintiff's rights under the Religious Land Use and Institutionalized Persons Act of 2000

(RLUIPA); and Plaintiff's rights under established Corrections Policy and Procedure, CPP 23.1 Religious Programs. (Exhibit C1-C8); (Exhibit D1-D2).

[Record No. 1, pp. 2-3]

With respect to his assertions that the Department of Corrections' policy violates his right to practice his religion, Smith further contends that, as a member of the AME Church, he is bound by the doctrines and worship practices of that religion. That includes the "sacred tenets" of holy matrimony between a husband and wife. He contends that, under these tenets, he and his wife:

> have Entered into a Covenant of Holy Vows with our Lord and Savior that the rings each placed upon our finger by our mate in which Defendant Thompson has forced this Plaintiff to remove shall be the only rings until death do us part. Nonbelievers and those without Religious guidance may consider the only ring placed on my finger by my wife to be cultural. However, the doctrines of my Church in which I am bound to follow are sanctioned by our Churches [sic] Bishop who has come and joined by wife and I together through Holy Matramony [sic] that: from Almighty God and Creator, has come male and female. That man shall leave his father and mother and be joined to his wife with these rings, that they shall be entered faithfully into marriage under the vows of covenant made with Almighty God, through our Church. Under these Holy Vows, our Rings Signify no longer Two, but One Flesh. Therefore, Almighty God has commanded: What God has joined together, let no Man Speperate [sic]. The ring placed on my finger by my wife has ajoined us in Unity, infinate [sic] love, heart and fidelity faithfull [sic] tenant beyond the reaches of life and, in accord with the doctrine of the A.M.E. Church that follows Almighty God's command that: to believe otherwise would secure hardness of our hearts. Plaintiff further asserts that the ring given by his wife is an essential componant [sic] of his tenant of Holy Vows and bound by our Lord and Savior's Command: All cannot accept this committment [sic], but only those whom it has been given and, hold true to their Holy Vows.

[Record No. 1, pp. 3-4] Smith repeats and expands these arguments in a separate pleading captioned "Memorandum of Law in Support of Complaint Pursuant to 42 U.S.C. 1983 or Bivens v. Six Unknown Fed. Narcotic Agents" filed March 5, 2010. [Record No. 16] Likewise, in a

pleading captioned "Memorandum of Law in Support of Reply to Defendant's Answer to Complaint for Plaintiff, Brian K. Smith," he disputes Thompson's assertions of immunity. [Record No. 17][1]

Defendant Thompson does not contest that the regulation in issue, CPP 17.1, prevents the Plaintiff from wearing his wedding ring because it contains three small stones. However, she contends that the regulation is necessary for the proper administration of correctional institutions in the Commonwealth. The regulation was promulgated pursuant to Kentucky Revised Statute ("KRS") §§ 196.035 and 197.020 which authorizes the Commissioner of the Department of Corrections to take the action challenged by the Plaintiff.[2]

## II.

The parties to this action have not provided the Court with any information which would indicate that the AME Church requires that a person practicing that faith maintain his or her original wedding ring or that the individual wear a ring with stones. Likewise, the "official website" of the African Methodist Church does not indicate that such is required of practicing members. *See generally* http://www.ame-church.com. According to Dennis C. Dickerson, AME's Historiographer and Executive Director of Research and Scholarship, the Church is an

---

[1] In his response to the Defendant's motion for summary judgment, Smith incorporates these prior pleadings [Record Nos. 16 & 17]. Likewise, he submits his affidavit which repeats many of these same claims. However, the affidavit and accompanying materials fail to establish a material factual issue regarding the central issue presented (i.e., whether wearing a particular wedding ring is a tenet of the AME religion). In addition to these materials, the Court has also considered the Plaintiff's response to the Defendant's motion for summary judgment [Record No. 20], together with all attachments, and his Motion for Summary Judgment filed July 19, 2010 [Record No. 27], in addressing the issues and arguments raised by the parties.

[2] The April 23, 2009, memorandum to inmates advised them that they would be allowed to mail out or dispose of any ring that did not meet the new criteria. While the inmate would be responsible for any insurance covering the items mailed, the institution would pay the cost of mailing.

offshoot of the Free African Society established by Richard Allen, Absalom Jones, and others, in Philadelphia, Pennsylvania, in 1787. *Id.* It had its origins over sociological and theological beliefs and differences with other religions.

> It rejected the negative theological interpretations which rendered persons of African descent second class citizens. Theirs was a theological declaration that God is God of all the time and for every body. The church was born in protest against slavery – against dehumanization of African people, brought to the American continent as labor.
>
> The Mission of the African Methodist Episcopal Church is to minister to the spiritual, intellectual, physical, emotional, and environmental needs of all people by spreading Christ's liberating gospel through word and deed. At every level of the Connection and in every local Church, the African Methodist Episcopal Church shall engage in carrying out the spirit of the original Free African Society, out of which the AME Church evolved: that is, to seek out and save the lost, and serve the needy.

*Id.* While the Church's roots are in the family of Methodist churches which it states "provides an orderly system of rules and regulations, . . . Episcopal" refers to the form of government under which the Church operates. *Id.*

AME's website also contains a listing of beliefs, including a statement that Methodism is its basic doctrine and order of worship. "It was born, through adversity, of the Methodist church and to this day does not differ in any major way from what all Methodists believe. The split from the main branch of the Methodist Church was not a result of the doctrinal differences but rather the result of a time period that was marked by man's intolerance of his fellow man, based on the color of his skin." *See* http://www.ame-church.com/beliefs.php. The website then lists AME's 25 Articles of Faith. With respect to the Church's rites and ceremonies, article 22 provides that:

**22. OF THE RITES AND CEREMONIES OF CHURCHES**

> It is not necessary that rites and ceremonies should in all places be the same, or exactly alike; for they have been always different, and may be changing according to the diversity of countries, times, and men's manners, so that nothing be ordained against God's Word. Whosoever, through his private judgment, willingly and purposefully, doth openly break the rites and ceremonies of the church to which he belongs, which are not repugnant of the Word of God, and are ordained and approved by common authority, ought to be rebuked openly, that others may fear to do the like, as one that offendeth against the common order of the Church and woundeth the consciences of weak brethren.
>
> Every particular Church may ordain, change, or abolish rites and ceremonies so that all things may be done to edification.

*Id.* Neither this Article of Faith nor any of the other enumerated Articles of Faith would appear to regulate or address the issue of wedding rings. Instead, the Article 22 would seem to be contrary to Smith's contention.[3]

### III.

Summary judgment is appropriate when "the pleadings, the discovery an disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

---

[3] Likewise, it does not appear that the United Methodist faith adheres to beliefs that would prevent a member from removing and/or substituting a wedding ring that would be subject to the prohibition addressed in CPP 17.1 with one that would not be subject to the prohibition. *See* http://www.umc.org.

one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986); *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once a moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In making this determination, the Court must review all the facts and the inferences drawn from those materials in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. Additionally, a federal court sitting in diversity must apply the law of the forum state of the claims asserted. *Lukowski v. CSX Transp., Inc.*, 416 F.3d 478, 484 (6th Cir. 2005).

In the present case, Defendant Thompson moves for summary judgment on several grounds. First, with respect to the claims asserted against her in her official capacity, Thompson argues that these are claims against the Commonwealth itself. Thus, under *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), such claims must be dismissed as being barred by the Eleventh Amendment to the United States Constitution. With respect to the Plaintiff's remaining claims, the Defendant contends that the revisions to CPP 17.1 do not violate Smith's rights under the First Amendment. She asserts that Smith has failed to offer any proof that his current wedding

ring: (1) is required by his AME faith; (2) is required as a part of his religious devotion; or (3) constitutes a central tenet of his AME faith. Further, Defendant Thompson points out that Smith retains only those First Amendment rights which are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the correction system.

With respect to Smith's argument that he has the right to possess the wedding ring of his choice because it is a religious practice as defined by CPP 23.1, as well as a special item of jewelry or special activity characteristic of a particular religion, the Defendant again points to the fact that the Plaintiff has not offered any evidence that the wearing of the ring in issue is anything more than a cultural activity. Likewise, the subject ring is not a special activity characteristic of Smith's church nor is it part of any religious practice under CPP 23.1. Regarding Smith's claim under the Fourteenth Amendment, Thompson notes that, to succeed on such a claim, He must establish purposeful discrimination resulting in a discriminatory effect among persons similarly situated. And no such evidence has been offered here.

In response, Smith again asserts that CPP 17.1 violates the tenets of the AME Church. However, he has not offered any documentation that wearing a wedding ring with stones or the continuous wearing of the wedding ring exchanged at the time of his marriage is a tenet of this religion. In fact, the Inmate Grievance Form submitted to the Department of Corrections on May 7, 2009, does not mention the AME Church. Instead, Smith asserts that maintaining his original wedding ring is essential to the "Christian religious practice of marriage." Further, he challenges the regulation because it does not contain a provision for the inmate to receive another wedding ring and that there are no approved vendors that sell wedding rings which could serve as a

replacement for originals that are subject to the department's ban. [Record No. 1; Inmate Grievance Form][4]

### A. The Claims Asserted Against Defendant Thompson In Her Official Capacity Are Barred By The Eleventh Amendment.

Smith has asserted claims for money damages against Thompson in her individual and official capacity.[5] As this Court has held on other occasions, Thompson, in her official capacity as Commissioner of the Kentucky Department of Corrections, is entitled to sovereign immunity. *Daniels v. Thompson*, 2009 U.S. Dist. LEXIS 30420 (E.D. Ky., Apr. 7, 2009). *Edelman v. Jordan*, 415 U.S. 651 (1974) (claim for retroactive money reimbursement asserted against state officials in their official capacities constitutes a suit for money damages against the state and is barred by sovereign immunity); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). This immunity extends not only to Smith's claims under the First and Fourteenth Amendments but to his claim for damages under the RLUIPA as well. *Cardinal v. Metrish*, 564 F.3d 794, 798-801 (6th Cir. 2009) (holding that, because the RLUIPA's "appropriate relief" language does not

---

[4] Through a document captioned "Informal Resolution 6235," Smith was advised that provisions were being made by the department to allow inmates to receive replacement rings that complied with CPP 17.1. Two appeals followed. On May 13, 2009, Smith filed Grievance No. 6235. Through this grievance form, Smith asserted that CPP 17.1 violated the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) as well as the Religious Freedom Restoration Act of 1993 (RFRA). He also cited *Benjamin v. Malcolm*, 1995 U.S. Dist. LEXIS 8717 (S.D. N.Y., June 26, 1995), as authority for his position. The Warden of the correctional institutional housing Smith denied the appeal on June 8, 2009, but explained that arrangements were in place to allow replacement rings to be received by inmates. This decision was appealed to the Commissioner but the final administrative grievance was denied on June 15, 2009. Neither of the grievance asserts that the regulation in issue violated a specific tenet of the AME Church. Instead, all of the Plaintiff's references were to the Christian religion.

[5] Smith concedes in his own Motion for Summary Judgment that the claims asserted against Thompson in her official capacity should be dismissed. [*See* Record No. 27, p. 4-5]

clearly and unequivocally indicate that the waiver of eleventh amendment sovereign immunity extends to monetary damages, such claims are barred under the RLUIPA).[6]

### B. The Restrictions On Jewelry Do Not Violate CPP 23.1.

On May 14, 2008, the Department of Corrections issued Correctional Policy and Procedure No. 23.1 ("CPP 23.1") regarding religious programs in Kentucky correctional facilities. This policy became effective on September 5, 2008, and was in effect at the time that CPP 17.1 became effective (July 6, 2009). CPP 23.1 contains a section defining terms as well as enumerated policies and procedures. In subsection II. A., the policy provides that,

> The Department of Corrections shall ensure that an inmate has the opportunity to participate in practices of his religious faith in accordance with the Religion Reference Manual.
>
> 1. These practices shall include religious publications, religious symbols, congregational religious services, individual and group counseling, and religious study classes.
>
> 2. Religious practices shall be limited only by documentation showing a threat to safety of persons involved in an activity or that the activity itself disrupts order in the institution.

[Record No. 1; CPP 23.1]

"Religious items" are defined in Section I to include items that are associated with particular religious faiths including "religious medallions, kufi cap, prayer rugs, crucifix, yarmulke, prayer beads, rosary, sacred eagle feathers, medicine bag, or Star of David. That section also defines "religious practice" as:

---

[6] Because the Court concludes that Smith has not asserted any valid claims in this proceeding, it is not necessary to address Defendant Thompson's additional argument that she is also entitled to qualified immunity. [*See* Record No. 19, pp. 13-14]

outwardly observable manifestations of religious beliefs including:

(a) Participating in congregations and meetings;
(b) Engaging in rituals and ceremonies;
(c) Praying, chanting, singing;
(d) Wearing special items of clothing, jewelry, hairstyles, or beards;
(e) Adhering to special diets; and
(f) Participating in special activities characteristic of a particular religion or adherents of a particular religion.

[Record No. 1; CPP 23.1]

According to Smith, a wedding ring may be considered to be a religious item or symbol and the wearing of a wedding ring may be defined as a religious practice under this policy. However, the regulation does not establish a right to wear a *particular* wedding ring (here, a wedding ring with small stones). Instead, it simply defines more clearly the type of ring that may not be displayed or worn as a religious item or symbol. Likewise, as previously noted, neither the AME Church nor the Methodist faith specify or provide instruction or guidance on the nature or form that a wedding ring must take. Therefore, the Court concludes that: (i) CPP 23.1 does not create a protected interest or right to wear a ring with stones or raised surfaces as a religious item or symbol or as part as any religious practice arguably observed by Smith and (ii) the revisions to CPP 17.1 do not violate CPP 23.1.

**C. The Revisions to CPP 17.1 Do Not Violate The RLUIPA Or Rights Under The First Amendment.**

Thompson argues that summary judgment is appropriate with respect to Smith's claim under the RLUIPA because the Plaintiff has failed to produce any evidence that he has a First Amendment right to wear his wedding ring. More specifically, she argues that there is no evidence that wearing a wedding ring is required by the AME faith or as a part of Smith's

religious devotion. Thus, it does not constitute a central tenet of his faith. However, she further contends that even if the Court were to find that Smith has a First Amendment right to wear a wedding ring, that right is limited due to his status as a prisoner.[7]

Citing *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001), Thompson correctly notes that the Plaintiff retain only those First Amendment rights which are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system. *See also, Pell v. Procunier*, 417 U.S. 817, 822 (1974). In short, imprisonment necessarily places limits on many of the constitutional freedoms enjoyed by citizens. That is not to imply, however, that all constitutional protections are surrendered once a citizen is incarcerated. Therefore, the Court must determine whether: (1) there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remains open to prison inmates; (3) what impact that accommodation of the asserted constitutional right will have on other inmates and guards; and (4) whether there are other readily available alternatives at a *de minimis* cost to valid penological interests. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

In the present case, the Defendant has established that the challenged policy furthers two legitimate interests. The policy recognizes the dangers that certain types of jewelry pose from a safety standpoint. Additionally, the limitation on value limits the extent to which jewelry is used for gambling and as barter for other items. The policy also accommodates the fact that

---

[7] Thompson notes that the Department of Corrections has accommodated prisoners request to wear wedding rings by allowing nonconforming rings to be mailed to the inmate's spouse with the cost borne by the institution. The spouse may then mail the inmate a ring that complies with CPP 17.1. This ring can be worn during the remainder of the prisoner's period of incarceration. [Record No. 19, p. 5]

wedding rings are given and worn as part of religious/marital ceremonies. The policy does not ban wedding rings entirely. Instead, it allows inmates to wear plain, smooth bands as long as they have no jewels, stones, or raised surfaces. The impact of this accommodation on other affected parties is neutral. Further, the Plaintiff has not offered any readily available alternatives which would be available at a *de minimis* cost while still recognizing the valid interests of maintaining prison security.

With respect to Smith's statutory claim, the Court notes that the RLUIPA is similar to the Religious Freedom Restoration Act of 1993 ("RFRA") in that the court must determine whether a plaintiff is likely to succeed in demonstrating that the regulation in issue imposes a substantial burden on his religious exercise. Assuming the plaintiff makes this initial showing, the court next considers whether the regulations meet strict scrutiny, *i.e.*, the regulation must be "the least restrictive means" towards furthering "a compelling governmental interest." *Cutter v. Wilkinson*, 544 U.S. 709, 712 (2005) (quoting 42 U.S.C. § 2000cc-1(a)-(2) (2000)). Again, this test is the same as that previously imposed under RFRA.

Under 42 U.S.C. § 2000cc-2(b), the Plaintiff has the burden of proving the existence of a substantial interference with the exercise of his religion. Because he has not shown that the wearing of a particular wedding ring is required by his religion, he fails to meet this burden. However, even assuming he can establish a general religious right to wear a wedding ring, the Commissioner has demonstrated that the limitation imposed upon Smith and other prisoners furthers a compelling governmental interest and that it does so by the least restrictive means available.

The Sixth Circuit has recognized that providing prison security serves a compelling governmental interest. *Hoevenaar v. Lazaroff*, 422 F.3d 366, 370-371 (6th Cir. 2005). In the present case, Defendant Thompson has demonstrated that the limitations regarding rings further this interest by suppressing contraband. The affidavit of Al Parke, Deputy Commissioner for Adult Institutions with the Kentucky Department of Corrections, establishes that CPP 17.1 is intended to limit activities such as fighting, gambling and using jewelry to barter for contraband. Further, he notes that, "limiting rings to plain smooth bands with no jewels, stones, raised surfaces, or other protrusions that could inflict damage limits the potential injury to inmates, guards or others who may be involved in a physical altercation. These revisions are reasonable and are very similar to the policies and procedures of other prisons throughout the United States regarding authorized inmate property." [Record No. 19; attached Affidavit]

The Court finds that the regulation is narrowly-tailored to meet this compelling governmental interest. Further, it does so by the least restrictive means available under the circumstances presented. In reaching this conclusion, the undersigned is mindful that the Supreme Court and Congress have cautioned that courts should not substitute their judgment for that of experienced prison officials. *Espinoza v. Wilson,* 814 F.2d 1093, 1097 (6th Cir. 1987)[8]; *Brown v. Johnson*, 743 F.2d 408, 412-13 (6th Cir. 1984). Cases interpreting the RFRA have consistently held that courts must give due deference to the judgment of prison officials, given

---

[8] In *Espinoza v. Wilson*, 814 F.2d 1093 (6th Cir. 1987), the Sixth Circuit held that, once prison officials have provided expert testimony sufficient to justify the security regulation and resultant impingement of prisoner rights, "the courts must defer to the expert judgment of the prison officials unless the prisoner proves by 'substantial evidence . . . that the officials have exaggerated their response' to security considerations." *Id*. at 1099 (quoting *St. Claire v. Cuyler,* 634 F.2d 109, 114-15 (3d Cir. 1980) (citations and footnote omitted)); *accord Hamilton v. Schriro*, 74 F.3d 1545, 1552-54 (8th Cir. 1996).

their expertise and the significant security concerns implicated by prison regulations. *Murphy v. Mo. Dept. of Corr.*, 372 F.3d 979, 987 (8th Cir. 2004) (citing *Weir v. Nix*, 114 F.3d 817 (8th Cir. 1997)); *Ochs v. Thalacker*, 90 F.3d 293 (8th Cir. 1996); *Hamilton v. Schriro*, 74 F.3d 1545 (8th Cir. 1996)). This deference is necessary "if prison administrators . . . and not courts [are] to make the difficult judgments concerning institutional operations." *Jones v. North Carolina Prisoner's Union*, 433 U.S. 119, 128 (1977).

In passing the RLUIPA, congress expressed a desire to continue its goal of not "overly burden[ing] prison operations, but rather intended to provide as much protection as possible to prisoners' religious rights without undermining the security, discipline, and order of those institutions." Thus, the *Murphy* Court concluded that RFRA cases according deference to prison decisions were applicable to cases brought pursuant to the RLUIPA. *Murphy*, 372 F.3d at 987-88 (citing 146 Cong. Rec. S6687 (daily ed. July 13, 2000) (statement of Senator Hatch); *see also Cutter*, 125 S. Ct. at 2123 (noting that Congress intended for courts to give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.") (quoting 146 Cong. Rec. S7775 (daily ed. July 27, 2000) (joint statement of Senator Hatch and Senator Kennedy on RLUIPA) (quoting S. Rep. No. 103-111, at 10 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1892, 1899, 1900)); *Hart v. CSP-Solano*, 2005 U.S. Dist LEXIS 20057, *14-*15 (E.D. Cal., July 8, 2005) ("Congress has consistently indicated, in passing both RFRA and RLUIPA, that giving deference to the experience and expertise of prison officials is still appropriate."); *Ra v. Braxton*, 2005 U.S. Dist. LEXIS 12878, at *5 (W.D.

Va., June 29, 2005) ("courts will afford prison administrators due deference in establishing necessary regulations and procedures to maintain good order, security and discipline consistent with considerations of costs and limited resources,"citing *Cutter v. Wilkinson*, 544 U.S. 709 (2005)).

When this deference is applied here, the Court concludes that safety and security concerns clearly support the policy being challenged by Smith. Smith has not demonstrated that prison officials have exaggerated their response to security considerations. In this regard, the Court is mindful of the ingenuity of prisoners in fashioning weapons from a variety of otherwise harmless objects. The Court is equally aware that items used for barter in prisons take many forms. Prison officials are in the best position to determine the nature and type of rings which prisoners will be allowed to possess while incarcerated. Here, the limitations imposed do not run afoul of any rights under the First Amendment or the RLUIPA.

### D. The Plaintiff Has Failed To Offer Any Evidence To Support His Claim Under The Fourteenth Amendment.

The Plaintiff asserts that enforcement of CPP17.1 violates his rights to due process and equal protection guaranteed by the Fourteenth Amendment. More specifically, he states that a similarly-situated class of inmates from New York successfully challenged a policy of the New York City Department of Corrections which sought to ban the possession, wearing, and display of all jewelry that identified inmates as members of certain groups or gangs. He contends that, based on the challenge to the regulation, a consent decree was entered in that matter which allowed the wearing of jewelry as long as it was not expensive and there was no likelihood that

it would be used as a weapon. According to Smith, the policy subsequently adopted allowed the wearing of wedding rings with small stones.

In her response, Defendant Thompson argues that Smith's factual contention is incorrect. She offers proof that the City of New York's Department of Correction has established a policy that identifies the specific personal items that an inmate may possess while in custody. The section on jewelry states as follows:

> Although we discourage inmates from receiving and possessing jewelry, inmates may receive the following items of jewelry.
>
> - One (1) watch (date and time functions only - maximum value $50)
> - One (1) wedding band (no stones or protrusions - maximum value $150)
> - One (1) religious medal (no stones, pins or protrusions) if worn around neck, a thin chain no longer that 26 inches may be worn (maximum value $50)

[Record No. 19; Exhibit B] According to Defendant Thompson, the New York case relied upon by Smith (*Benjamin v. Malcolm*, 1995 WL 378529 (S.D. N.Y., June 23, 1995 )) did not hold that the restrictions such as the one in issue is impermissible. Instead, as Thompson points out, the restriction ultimately adopted by the City of New York Department of Correction is similar to the one being challenged here.

With respect to his Fourteenth Amendment claim, the Court also notes that it is insufficient to merely argue that a prisoner is being treated differently by comparing his situation with prisoners located in another state. Instead, his situation must be considered in comparison with inmates confined in the Kentucky correctional system. *Daniels v. Thompson*, *supra* at *3-*4. *See also Stewart v. McManus*, 924 F.2d 138 (8th Cir. 1991); *Tucker v. Angelone*, 954 F.Supp. 134, 136 (E.D. Va. 1997). In the present case, Smith has not offered any evidence of

purposeful discrimination "resulting in a discriminatory effect among persons similarly situated." *McCleskey v. Kemp*, 481 U.S. 279 (1987).[9] His Fourteenth Amendment claim based on the denial of equal protection, therefore, fails factually and as a matter of law.

To resolve a Fourteenth Amendment procedural due process claim, courts engage in a two-step analysis. First, the court must determine whether a protected property or liberty interest exists. Second, if a protected right is shown, the Court evaluates what procedures are required to protect that interest. *Singfield v. Akron Metro Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004). "Property interests protected by the Constitution stem from an independent source, such as state law, and are not created by the Constitution itself." *Sharp v. Lindsey*, 285 F.3d 479, 487 (6th Cir. 2002) (*quoting Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 537 (1985)). Therefore, Smith must first identify some statutory or contractual right conferred by the state which supports his claim *Id.* However, there is no protected property or liberty interest under CPP 17.1 or CPP 23.1 to wear a particular piece of jewelry.

Finally, the Court recognizes that, while procedural due process entitles individuals to the opportunity to be heard in certain circumstances, this opportunity may be curtailed in prison settings such as the present "when the government commits a legislative act equally affecting all those similarly situated." *Foster v. Hughes*, 979 F.2d 130, 132 (8th Cir. 1992). Thus, Smith's Fourteenth Amendment due process claim also fails.

---

[9] Smith asserts in the affidavit filed in opposition to the Defendant's motion for summary judgment that, as a result of a grievance, staff members are allowed to wear rings with raised surfaces. [Record No. 20; Grievance No. 6290] This conclusion by the Commissioner does not alter the Court's analysis of the issues presented by the Plaintiff.

**IV.**

The Plaintiff may not assert claims for monetary damages against Defendant Thompson in her official capacity. Further, the Department of Corrections' regulations and policies regarding jewelry (specifically, the restriction regarding wedding rings) do not violate the First Amendment, Fourteenth Amendment, the Religious Land Use and Institutionalized Persons Act, or any rights or interests that may be asserted under state law or prison policies and regulations. Therefore, all claims asserted by Smith will also be dismissed. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant LaDonna Thompson's motion for summary judgment [Record No. 19] is **GRANTED** with respect to all claims asserted in this action by Plaintiff Brian Keith Smith.

2. Plaintiff Brian Smith's motion for summary judgment [Record No. 27] is **DENIED**.

3. This action is **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket.

4. A final and appealable Judgment will be entered this date consistent with this Memorandum Opinion and Order.

This 23rd day of July, 2010.



Signed By:
*Danny C. Reeves* DCR
United States District Judge